BLUE CROSS AND BLUE SHIELD
OF NEW JERSEY, INC., et al.,
Plaintiffs,

v.

PHILIP MORRIS, INCORPORATED,
et al., Defendants.

No. 98 CV 3287(JBW).

United States District Court,
E.D. New York.

April 25, 2001.

Dewey Ballantine LLP by Paul J. Bschorr, Vincent R. FitzPatrick, Jr., Michael Hefter, Heather K. McDevitt, New York City, Dewey Ballantine LLP by Martha J. Talley, Washington, DC for Plaintiffs Blue Cross, et al.

Arnold & Porter by Murray R. Garnick, Washington, DC, Sedgwick, Detert, Moran & Arnold by Kevin J. Dunne, San Francisco, CA, Sedgwick, Detert, Moran & Arnold by James T. Conlon, San Francisco, CA, for Defendant Philip Morris, Incorporated.

Sedgwick, Detert, Moran & Arnold by David M. Covey, New York City, Kirkland & Ellis by Kenneth N. Bass, Washington, DC, for Defendant Brown & Williamson Tobacco Corporation.

Greenberg Traurig, LLP by Alan Mansfield, Washington, DC, Shook, Hardy & Bacon, LLP by Gary R. Long, Kansas City, MO, for Defendants Lorillard Tobacco Company, Lorillard, Inc.

Debevoise & Plimpton by Steven Klugman, New York City, for Defendant Council for Tobacco Research, U.S.A., Inc.

Jacob, Medinger & Finnegan, LLP by Barry S. Schaevitz, New York City, for Defendant Smokeless Tobacco Council, Inc.

Womble, Carlyle, Sandridge, & Rice, PLLC by R. Dal Burton, Atlanta, GA, Womble, Carlyle, Sandridge, & Rice, PLLC by Thomas D. Schroeder, Ursula M. Henninger, Winston–Salem, NC, Collier, Shannon, Rill, & Scott, PLLC by John B. Williams, Washington DC, for Defendants R.J. Reynolds Tobacco Co., and RJR Nabisco, Inc.

Chadbourne & Parke LLP by Thomas J. McCormack, New York City, for Defendant British American Tobacco (Investments) Limited (formerly known as British–American Tobacco Company Limited).

Simpson Thacher & Bartlett by Joseph McLaughlin, New York City, for Defendant BAT Industries P.L.C.

Davis & Gilbert, LLP by Bruce M. Ginsberg, New York City, for Defendant Hill & Knowlton, Inc.

Kasowitz, Benson, Torres & Friedman LLP by Leonard Feiwus, New York City, for Defendants Liggest Group Inc., Liggest & Myers, Inc., and Brooke Group Ltd.

Seward & Kissel by Anthony R. Mansfield, New York City, for Defendant The Tobacco Institute, Inc.

### *MEMORANDUM & ORDER*

WEINSTEIN, Senior District Judge.

### I. Introduction

Defendants proffer the factual findings of a judge of the Quebec Superior Court to impeach one of plaintiff's experts. In a non-jury trial raising factual issues similar to the instant one the judge denigrated the conclusions of the expert. Plaintiff's motion to exclude is granted. The evidence is inappropriate.

### II. Facts

The allegations—fraud of defendants in denying smoking caused disease, leading to increased costs to the plaintiff—have already been described. *See, e.g., Blue Cross v. Philip Morris,* 113 F.Supp.2d 345 (E.D.N.Y.2000); *see also Simon v. Philip Morris,* 124 F.Supp.2d 46 (E.D.N.Y.2000) (collecting related opinions).

The expert will present models designed to quantify the portion of smoking-related health care costs attributable to defendants. He uses a "counterfactual world" to calculate a "conduct attributable fraction" representing the portion of medical costs due to smoking related illnesses resulting from defendant's alleged fraud. A

"smoking attributable fraction" and costs calculated by other experts are used to compute damages.

A full evidentiary hearing established to the court's satisfaction that the expert's proposed testimony was sufficiently reliable to be admitted under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *See Blue Cross v. Philip Morris,* No 98 CV 3287, 2000 WL 1738338 (E.D.N.Y. Nov. 1, 2000); *see also Falise v. American Tobacco Co.,* 107 F.Supp.2d 200 (E.D.N.Y.2000) (setting forth criteria for admitting expert testimony).

The expert has impressive credentials. He is a professor of economics at a leading university and has been a primary care physician of a major hospital for 23 years. Report at 1, Nov. 19, 1999. His education is consistent with his responsibilities. He has served on invited panels for the National Academy of Sciences and on the Council for the National Institute of Health and has been a consultant to a number of federal and state agencies in connection with the health consequences of smoking. *Id.* at 3. He has published more than seventy peer reviewed papers, many of which deal with tobacco issues. *Id.* at 47–56. Since 1979 the expert has been a scientific editor contributing to several Surgeon General Reports on tobacco. Within the past three years he has testified or provided advice in a number of different cases brought by states attorneys general and private entities against the tobacco industry. *Id.* at 2.

Defendants intend to use the opinion of the judge in *RJR–MacDonald, Inc. v. Canada (Attorney General),* 82 D.L.R. (4th) 449, 513–514 to impeach the expert. The judge rejected the expert's models using strong language. He wrote:

In an attempt to establish a correlation between advertising bans and consumption the [plaintiff] called [the expert] as a witness. It should be pointed out that he was retained ... as an expert for the purposes of this trial. This witness struck the court as extremely intelligent and very skilled in the manipulation of ideas and statistics. Unfortunately, he did not demonstrate the scientific objectivity that the court is entitled to expect from an expert witness of his stature. He often evaded troublesome questions in giving evidence; it was often only on close and rigorous cross-examination by counsel for applicants that complete answers were obtained and, frequently, his answers were self-justifications. This is all the more deplorable given that he was dealing with regression analysis, which is a complex subject....

Precise methodology, accurate data and the assurance of scientific rigour are essential in these matters where a simple error in the data, the methodology or the calculation affects all the results. In this instance, the court is of the opinion that the input data used by [the expert] were unreliable and that his methodology led necessarily to the desired result. Here again, the court entirely agrees with the analysis of reports and testimony of [the expert] made by [defendant's] counsel in his argument ... and accords no probative value to those reports or that testimony.

*Id.* at 513–514.

Defendants claim that the evidence is admissible to impeach the credibility of the expert. They point out that an expert witness's testimony calls for latitude in impeachment because his or her professional stature may influence the jury's assessment of credibility. They also argue that because witnesses like this one testify in many cases their peers are the courts as

much as those in the scientific community. Other court fact-findings are thus admissible, they contend, to impeach the expert, in the same way statements in a scientific treatise are admissible under the Federal Rules of Evidence. *See* Fed.R.Evid. 803(18).

## III. Law

■ An out of court statement "offered in evidence to prove the truth of the matter asserted" is inadmissable hearsay, except when otherwise provided by the Federal Rules of Evidence. Fed.R.Evid. 801(c), 802; *United States v. Diaz,* 176 F.3d 52 (2d Cir.1999). The hearsay rule generally prohibits the use (with many exceptions) of a person's statement about the world used to prove the truth of the assertion unless the declarant can be cross-examined in court or by deposition. 5 John Henry Wigmore, *Wigmore on Evidence,* 9 (3d ed. 1940) ("The belief that no safeguard for testing the value of human statements is comparable to that furnished by cross-examination, and the conviction that no statement (unless by special exception) should be used as testimony until it has been probed and sublimated by that test, has found increasing strength in lengthening experience."). The belief, or "perhaps hope," is that cross-examination, is effective in exposing "imperfections of perception, memory and narration," as well as of opinions. Fed.R.Evid. advisory committee's introductory note to section on hearsay.

Judicial findings in other cases proffered as evidence are generally characterized as inadmissable hearsay. *See, e.g., McCormick on Evidence* § 318, at p. 894 (3d ed.1984). No specific exceptions apply under the Federal Rules of Evidence. *See* Fed.R.Evid. 803 (listing specific exceptions); *see also, e.g., United States v. Jones,* 29 F.3d 1549, 1554 (11th Cir.1994)

(denying exception for government documents under Rule 803(8)(C)); *Nipper v. Snipes,* 7 F.3d 415, 417–418 (4th Cir.1993) (same); *Zenith Radio Corp v. Matsushita Elec. Indus. Co.,* 505 F.Supp. 1125, 1185 (E.D.Pa.1980) ("[A] review of the advisory committee note makes it clear that judicial findings are not encompassed; not only is there not the remotest reference to judicial findings, but there is a specific reference on the findings of officials and agencies within the executive branch."), *rev'd on other grounds sub nom, In re Japanese Electronic Products Antitrust Litigation,* 723 F.2d 238 (3rd Cir.1983), *rev'd,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Excluding credibility assessing statements by judges in other cases avoids the practical difficulty of weighing judicial opinions against contrary evidence. *See* Margaret A. Berger, et. al, *Evidence,* 803.28[6](2001); *see also Greycas, Inc. v. Proud,* 826 F.2d 1560, 1566 (7th Cir.1987); *Zenith Radio Corp v. Matsushita Elec. Indus. Co.,* 505 F.Supp. 1125, 1185 ("[T]he trustworthiness evaluation which we have discussed at length ... would be totally unsuited to evaluating judicial findings."). The difficulty in assessing the probative force of comments by a judge on the credibility of a witness is especially great for a jury, which may give exaggerated weight to a judge's supposed expertise on such matters. *See Quercia v. United States,* 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321 (1933) ("The influence of a trial judge on a jury is necessarily and properly of great weight and his lightest word or intimation is received with deference, and may prove controlling") (internal citations omitted); *United States v. Fernandez,* 480 F.2d 726 (1973) (Friendly, J.) (trial judge's impression that he considered defense expert's testimony unreliable warranted a new trial); *cf. Newton v. State,* 147 Md. 71, 127 A. 123, 131 (1924) ("The obvious purpose was to induce the jury to believe

that, as the testimony of the witness as given before them had already been discredited by three judges sitting in the same court in another case, therefore they should discredit it in this case, a wholly unwarranted conclusion unsupported by any authority with which we are familiar."); John H. Mansfield, Norman Abrahams, Margaret A. Berger, et. al., *Evidence: Cases and Materials* 451–453 (9th ed.1997) (citing cases prohibiting impeachment by findings of another tribunal); Lawrence Kaplan, *Propriety and Prejudicial Effect in Civil Trial of Federal Judge's Disparaging Remarks Concerning Party, Witness, or Attorney*, 144 American Law Reports 363 (1998) ("Remarks that disparage a party, a witness, or an attorney, or discredit the testimony given parties or witnesses, or the arguments made or positions taken by counsel, carry with them the very great potential to influence the minds of the jurors and to prejudice the rights of the litigants.").

Unlike the scientific community's process of peer review, there is no practical way for a scientist to defend against a judge's assessments of credibility. Accordingly, courts have also excluded out-of-court statements by judges under Rule 403 (undue prejudice) and Rule 605 (prohibiting judges as witnesses). *See, e.g., Nipper*, 7 F.3d at 418 (excluding judicial findings on 403 grounds); *Zenith Radio Corp v. Matsushita Elec. Indus. Co.*, 505 F.Supp. at 1185 (E.D.Pa.1980) (excluding findings under Rule 403 and 605); 5 John H. Wigmore, *Wigmore on Evidence*, § 1671a (James H. Chadbourn rev.1974) (describing common law rule); 1 *McCormick on Evidence* § 298 (John W. Strong ed., 4th ed.1992); Margaret A. Berger, et. al. *Evidence* ¶ 803(22)[01] (1993); *cf. United States v. Terry*, 702 F.2d 299, 316 (2d Cir.1983) (in a non-jury case, not error to impeach expert with evidence that judge

in another case found that expert had "guessed under oath").

The restrictions governing judicial findings in other cases contrast with the broad latitude permitted counsel in cross-examining experts. *See, e.g., N.V. Maatschappij Voor Industriele Waarden v. A.O. Smith Corp.*, 590 F.2d 415, 421 (2d Cir. 1978) ("[U]nduly harsh limitations on crossexamination of a key expert witness can amount to prejudicial error."); *Standard Oil Co. v. Moore*, 251 F.2d 188, 222 (9th Cir.1957) ("If the opinion is received, the court may, in its discretion, allow the expert to reveal to the jury the information gained during such investigations and studies. Wide latitude in cross-examination should be allowed."); *Gwathmey v. United States*, 215 F.2d 148, 158 (5th Cir. 1954) ("[A] rather broad latitude should have been allowed for cross-examination to enable the jury to judge the witness as to his fairness."). On cross-examination counsel may probe the witness's qualifications, "experience, and sincerity; weaknesses in the opinion's basis, the sufficiency of assumptions, as well as the strength of the opinion." *See* Michael H. Graham, *Expert Witness Testimony and the Federal Rules Of Evidence: Insuring Adequate Assurance of Trustworthiness*, 1986 U. Ill. L.Rev. 43, 69–71 (1986). During the impeachment process, opposing counsel may require the expert to disclose facts underlying the expert's opinion, including those not admitted into evidence. *See* Fed. R.Evid. 703. The large scope permitted cross examiners is rooted in an understanding that jurors may have difficulty independently measuring the experience of expert witnesses by applying their own common experience or intuition. *See* Margaret A. Berger, et. al., *Evidence*, § 706[01] (2001) ("When the evidence relates to highly technical matters and each side has shopped for experts favorable to

its position, it is naive to expect the jury to be capable of assessing the validity of diametrically opposed testimony.").

██ The precise scope of cross-examination of an expert witness rests within the broad discretion of the trial court. *See, e.g., N.V. Maatschappij Voor Industriele Waarden v. A.O. Smith Corp.,* 590 F.2d at 421. ("Although cross-examination is an essential element of our system of adversarial advocacy, the proper scope for cross-questioning is, like the qualification of witnesses, a matter of trial court discretion which we do not lightly disturb.")

██ While a trial court should prevent outside judicial decisions from clouding jury findings, it may consider them itself in deciding whether an expert's proposed testimony is sufficiently reliable to permit it under Rule 702 of the Federal Rules of Evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (charging trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony); *cf. Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris Inc.,* No. 98 CV 3287, 2000 WL 1880283 (E.D.N.Y. Dec. 27, 2000) (limiting scope of expert's testimony after reviewing his testimony in a related state court trial).

██ Rule 104(a) permits a trial judge to consider hearsay evidence in assessing an expert's reliability. *See* Fed.R.Evid. 104(a); 702 advisory committee's note. After a witness has been repeatedly rejected by courts—as in the case of the bendectin litigation—it is appropriate to take judicial notice of lack of credibility to reject a witness on *Daubert* grounds. The courts need not repeatedly hold preliminary hearings to determine that the testimony of a particular witness is unacceptable. Repeated demonstration that the wheel is round or that a witness is a charlatan is not required in a sensible system of justice.

### IV. Application of Law To Facts

██ The proposed evidence is inadmissable. It is also unfair. When a judge attacks a witness there is no effective defense. Peer review of such witnesses is different; if an expert does not act properly that expert ought to be attacked in the normal course of scientific debate—or in the case of a trial, with the opportunity for rehabilitation and explanation. To appropriately meet the evaluations of another judge would require the jury to delve deeply into the case that judge was trying. This enterprise is not appropriate under Rule 403.

The critical comments of the judge were appropriate since he was the trier of fact in a non-jury case, but introduction of that opinion in the present case risks jeopardizing the jury's independent assessment of the expert's testimony. This court has found the expert's present testimony sufficiently reliable under *Daubert.* Allowing another judge to disturb evaluations of credibility specifically left to the present jury is not contemplated by the Federal Rules and is not desirable.

In this case the cross examination of the witness was blistering and lasted more than a full trial day. An extensive deposition and exchange of reports provided ample fuel for the broad-based attack on the expert's credibility. Defendants' experts will continue the attack. They do not need another judge as an ally.

### V. Conclusion

The evidence is excluded.

SO ORDERED