[No. 59034-1-I.   Division One.   May 19, 2008.]

*In the Matter of the Detention of* CURTIS N. POUNCY.

610

*Casey Grannis* and *Christopher Gibson* (of *Nielsen, Broman & Koch, PLLC*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Barbara A. Flemming* and *Timothy A. Bradshaw, Deputies*, for respondent.

¶1  DWYER, A.C.J. — Curtis Pouncy appeals from an order authorizing his commitment as a sexually violent predator (SVP) pursuant to chapter 71.09 RCW, the sexually violent predator act. He raises four assignments of error: (1) that his right to a unanimous jury verdict was violated, (2) that the trial court erred by not instructing the jury on the definition of "personality disorder," (3) that the trial court improperly commented on the evidence, and (4) that the trial court erred by allowing Pouncy's expert witness to be impeached through the use of findings of fact entered in an unrelated Yakima County Superior Court matter. Finding merit in the latter contention, we reverse.

I

¶2  On April 1, 2003, the State filed a petition seeking Pouncy's commitment pursuant to chapter 71.09 RCW. A commitment proceeding was held before a jury.

¶3  To establish that Pouncy was a sexually violent predator, the State was required to prove the following elements beyond a reasonable doubt: (1) that Pouncy had been convicted of or charged with a crime of sexual violence, (2) that Pouncy suffered from a mental abnormality[1] or personality disorder, and (3) that such mental abnormality or personality disorder made Pouncy likely to engage in predatory acts of sexual violence if not confined in a secure facility. RCW 71.09.020(16); *In re Det. of Audett*, 158 Wn.2d

---

[1] "Mental abnormality" is defined as "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to the commission of criminal sexual acts in a degree constituting such person a menace to the health and safety of others." RCW 71.09.020(8).

712, 727, 147 P.3d 982 (2006) (quoting *In re Det. of Thorell*, 149 Wn.2d 724, 758-59, 72 P.3d 708 (2003)).

¶4 Dr. Richard Packard, a licensed psychologist and certified sex offender treatment provider, testified on behalf of the State. Dr. Richard Wollert, a clinical psychologist, testified on behalf of Pouncy. Dr. Packard opined that Pouncy suffered from a mental abnormality called paraphilia, not otherwise specified, nonconsent (paraphilia NOS nonconsent). Dr. Packard also diagnosed Pouncy with antisocial personality disorder.

¶5 During the trial there was much testimony regarding pedophilia, including Pouncy's treatment, or lack thereof, for pedophilia. Dr. Packard, the State's expert, testified that there was "evidence indicating that it's reasonable" to consider the possibility that Pouncy suffered from pedophilia. Verbatim Report of Proceedings (VRP) (Sept. 26, 2006) at 23-26. Dr. Packard testified to incidents in Pouncy's past history that were "pretty strongly suggestive that pedophilia may also be a problem for him." VRP (Sept. 26, 2006) at 23-26. However, Dr. Packard testified that he "did not conclude that Mr. Pouncy definitely has pedophilia." VRP (Sept. 26, 2006) at 26. Pouncy did not object at trial to this testimony concerning pedophilia.

¶6 Dr. Packard also opined that Pouncy was likely to reoffend. Dr. Wollert disagreed and further opined that Pouncy did not suffer from a mental abnormality or personality disorder. In addition, the experts disputed the validity and reliability of the paraphilia NOS nonconsent diagnosis, as well as whether Pouncy met the criteria for having antisocial personality disorder.

¶7 In cross-examination, after challenging Dr. Wollert's adherence to the "Null hypothesis,"[2] the State questioned him about findings of fact made by a Yakima County Superior Court judge in an unrelated proceeding:

---

[2] Dr. Wollert explained that applying the Null hypothesis to his analysis amounted to approaching his evaluation of Pouncy with the initial assumption that Pouncy was not an SVP and adhering to this belief until the available evidence demonstrated otherwise.

Q. And you're aware, are you not, of who Dr. Hanson is?

A. Yes.

Q. And Dr. Hanson is the person that developed the Static 99, the only instrument that you used in this case, right?

A. Yes.

Q. And Dr. Hanson was specifically asked about your technique of using the Null hypothesis testing in SVP evaluation, right?

A. Yes.

Q. And I'm going to hand you what's been marked Exhibit 155. That's a letter from Dr. Hanson, right?

A. Yes, it is.

Q. On page two of that letter, Dr. Hanson states: Dr. Wollert's criticism of Dr. Rawlings, another evaluator, were from the standpoint of the Null logic model of hypothesis testing, quote unquote. To my knowledge, this Null hypothesis approach to psychological evaluations as presented by Dr. Wollert is original to Dr. Wollert. That's what Dr. Hanson said, right?

A. Yes, yes.

Q. And by his admission, it's not widely shared among other evaluators, right?

A. Yes.

Q. And he goes on to say that, although Dr. Wollert claims the Null hypothesis approach is superior to other models, I was not convinced that his approach is an improvement over existing practice or that it has a robust logical foundation.

A. That's what he says.

Q. And then he goes on to say, in particular, the logical basis of the default position, Null hypothesis, is not given by the model. Why, for example, should the default position be that an offender does not meet criteria, rather than the default position being that an offender meets criteria, particularly when an offender has previously been determined to meet the criteria? So that was Dr. Hanson's response to this Null hypothesis testing, right?

A. That's what he wrote, yes.[3]

. . . .

Q. You testified in a case of In Re: Robinson, right?

A. Yes.

Q. Do you recall that case?

A. It's quite some time ago. I recall—I recall portions of it, but certainly not all of it.

Q. In that case you testified about the Null hypothesis testing approach that you used, right?

A. Yes.

Q. And I asked you about this in your deposition, right?

A. Meaning what?

Q. I asked you about the Robinson case in your deposition?

A. Yes, you asked me about the Robinson case, yes.

Q. And when you say this was some time ago, the findings and conclusions came out in March of 2006, right?

A. Right. The testimony was some time before that.

Q. And in the Robinson case—I'm going to hand you what's been marked Exhibit 156. I want you to look at finding of fact number 19, which is on page four.

A. Yes.

Q. And it states, Dr. Wollert's methods of assessing the impact of age on recidivism are generally not accepted in the—

[DEFENSE COUNSEL]: Objection, Your Honor, foundation.

THE COURT: On that basis the objection is overruled.

Q. In the community of mental health professionals who evaluate and assess persons in SVP matters. This includes his use of Bayes theorem[4] and Null hypothesis, right?

A. Yes, that's what the judge signed.

---

[3] On redirect examination, Dr. Wollert explained that he evaluated Pouncy before Pouncy was found to be an SVP and that the Null hypothesis is not applied when evaluating a person who has already been determined to be an SVP.

[4] Dr. Wollert testified that the Bayes theorem is a formula that he used to recalibrate actuarial tests so that they more accurately estimate the sexual recidivism rate for offenders of different ages.

Q. And that's the finding of fact in this case, that your methodologies are not generally accepted in the scientific community, right?

A. That is what the judge signed.

Q. And when I asked you about that in your deposition, you said, geez, I didn't even know anything about that, right?

A. Right. I had not received a copy of that, so that it was new information to me, yes.

VRP (Oct. 10, 2006) at 157-61. Later, the State returned to the prior judicial factual findings during continued cross-examination of Dr. Wollert:

Q. You testified in the Robinson case, right?

A. Yes.

Q. We've talked about that before?

A. We have.

Q. We've talked about the court's finding that you—your Null hypothesis testing was not generally accepted in the scientific community, correct?

A. That is what the judge—that one judge signed off on, yes.

Q. That one judge also signed off on that same statement regarding the Bayes theorem, right?

A. That's right.

Q. Dr. Wollert's methods of assessing the impact of age on sexual recidivism are not generally accepted in the community of mental health professionals who evaluate and assess persons in SVP matters. This includes his use of Bayes theorem and Null hypothesis, right?

A. That's what the judge signed off on.

VRP (Oct. 11, 2006) at 35-36. On redirect examination, Dr. Wollert stated that he had testified in many cases in which he referenced both the Null hypothesis and the Bayes theorem subsequent to the issuance of the Yakima court's factual findings in the Robinson matter.

¶8 Later in the trial, the State informed the trial court that it intended to seek the introduction of evidence of another court's factual findings from yet another prior

unrelated case in which it was concluded that one of Pouncy's witnesses, a private investigator, was not credible. The trial court excluded the evidence, reasoning:

> It is not appropriate for a witness to testify as to the credibility of another witness, and I would—and I don't find this relevant, unless somehow an issue of bias is raised. Had [defense counsel] objected on the issue of relevance to the findings of the Yakima judge, I would have sustained that objection.

VRP (Oct. 11, 2006) at 140.

¶9 In closing argument, the State discussed the issue of pedophilia, without objection from Pouncy.

## II

¶10 Pouncy first contends that because the State presented evidence of alternative means to prove the mental illness element of RCW 71.09.020, while failing to introduce substantial evidence as to each alternative, he was denied his right to a unanimous jury verdict. We disagree.

¶11 The right to a unanimous jury verdict applies in SVP civil commitment hearings. RCW 71.09.060(1); *In re Det. of Keeney*, 141 Wn. App. 318, 327, 169 P.3d 852 (2007). Principles regarding the right to unanimous jury verdicts in criminal proceedings apply equally in SVP civil commitment hearings. *In re Det. of Halgren*, 156 Wn.2d 795, 809-11, 132 P.3d 714 (2006); *Keeney*, 141 Wn. App. at 327. One such principle is the rule that

> when there is a single offense committable in more than one way, "it is unnecessary to a guilty verdict that there be more than unanimity concerning guilt as to the single crime charged . . . regardless of unanimity as to the means by which the crime is committed provided there is substantial evidence to support each of the means charged."

*Halgren*, 156 Wn.2d at 809 (alteration in original) (quoting *State v. Arndt*, 87 Wn.2d 374, 377, 553 P.2d 1328 (1976)).

¶12 Specifically, Pouncy contends that the State offered three alternative evidentiary theories in support of its

contention that Pouncy suffered from a personality disorder or mental abnormality: (1) that Pouncy suffered from a personality disorder (antisocial personality disorder), (2) that Pouncy suffered from the mental abnormality of paraphilia NOS nonconsent, and (3) that Pouncy suffered from the mental abnormality of pedophilia. Thus, he argues, the State was required, but failed, to establish by substantial evidence that Pouncy suffered from *each*[5] of these three alleged alternative means of proving that Pouncy suffered from a mental abnormality or personality disorder in order for the jury's verdict to be considered to be unanimous.

¶13 Pouncy's claim is unavailing, however, because the alternative means analysis does not apply to circumstances involving "means within a means." *State v. Al-Hamdani*, 109 Wn. App. 599, 604, 36 P.3d 1103 (2001) (citing *In re Pers. Restraint of Jeffries*, 110 Wn.2d 326, 752 P.2d 1338 (1988)).

¶14 Proof that a respondent in an SVP proceeding suffers from a "mental abnormality" or proof that such a respondent suffers from a "personality disorder" constitute the two distinct means of establishing the mental illness element of the SVP determination. *Halgren*, 156 Wn.2d at 811. "Mental abnormality" and "personality disorder" are the two factual alternatives set forth in the relevant statute. *Halgren*, 156 Wn.2d at 811; *see* RCW 71.09.020(16).

¶15 In *In re Personal Restraint of Jeffries*, 110 Wn.2d 326, a jury found by special verdict that two statutory aggravating circumstances had been proved. They were:

> "The defendant committed the murder to conceal the commission of a crime or to protect or conceal the identity of any person committing a crime.
>
>    ". . . .

---

[5] Pouncy concedes that the diagnoses of paraphilia NOS nonconsent and antisocial personality disorder were supported by substantial evidence but notes that Dr. Packard testified that he did not conclude that Pouncy "definitely has pedophilia." VRP (Sept. 26, 2006) at 26.

"There was more than one victim and the murders were part of a common scheme or plan or the result of a single act of the defendant."

*Jeffries*, 110 Wn.2d at 339 (quoting special verdict form). The verdict form was based on the two statutory aggravating circumstances elucidated in former RCW 10.95.020(7) and (8) (1981), as set forth in the jury instructions. *Jeffries*, 110 Wn.2d at 338 n.29. On collateral review, Jeffries argued that the jury was required to unanimously agree that he had committed the murder either "to conceal the commission of a crime," or "to protect the identity of any person committing a crime," or "to conceal the identity of any person committing a crime." *Jeffries*, 110 Wn.2d at 339-40. The Supreme Court rejected this argument as improperly creating "means within means." *Jeffries*, 110 Wn.2d at 339-40.

¶16 Instead, the Supreme Court held that the trial court had properly instructed the jury that it was required to unanimously agree as to whether either of the two statutory alternatives, former RCW 10.95.020(7) or (8), were proved beyond a reasonable doubt. *Jeffries*, 110 Wn.2d at 339-40. The Supreme Court concluded that there was no requirement to further instruct the jury. *Jeffries*, 110 Wn.2d at 339-40. In other words, "[a]lthough the jury must be unanimous as to the alternative circumstances satisfying aggravated murder, it was not required to unanimously agree as to facts (alternative ways) satisfying each of the alternative circumstances." *State v. Strohm*, 75 Wn. App. 301, 308 n.3, 879 P.2d 962 (1994) (citing *Jeffries*, 110 Wn.2d at 339-40).

¶17 Following *Jeffries*, we have consistently held that there is no requirement of unanimity with regard to "means within means." *See, e.g.*, *Al-Hamdani*, 109 Wn. App. at 607; *State v. Laico*, 97 Wn. App. 759, 763, 987 P.2d 638 (1999); *Strohm*, 75 Wn. App. at 309.

¶18 Here, the jury was properly instructed that it must unanimously agree as to whether either of the two alterna-

tive means, mental abnormality or personality disorder, was proved beyond a reasonable doubt.[6] No further instruction as to unanimity was required.

■ ¶19 Where a rational trier of fact could have found beyond a reasonable doubt that Pouncy suffered from both a mental abnormality and a personality disorder, Pouncy's constitutional right to jury unanimity was not violated. *See Halgren*, 156 Wn.2d at 811. Here, Pouncy correctly concedes that substantial evidence was presented to support a jury finding that he suffered from both paraphilia NOS nonconsent and antisocial personality disorder. Thus, there was no error.

## III

¶20 Pouncy next assigns error to the trial court's decision not to instruct the jury with his proposed definition of "personality disorder."[7]

■ ■ ¶21 Whether to give a proposed instruction is within the discretion of the trial court and is reviewed for an abuse of discretion. *In re Det. of Greenwood*, 130 Wn. App. 277, 287, 122 P.3d 747 (2005), *review denied*, 158 Wn.2d 1010 (2006); *In re Det. of Twining*, 77 Wn. App. 882, 895, 894 P.2d 1331 (1995). Jury instructions are proper when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury

---

[6] Relevant portions of instruction 3 read:

To establish that the respondent, Curtis Pouncy, is a sexually violent predator, the State must prove each of the following elements beyond a reasonable doubt:

. . . .

That Curtis Pouncy suffers from a mental abnormality and/or a personality disorder which causes serious difficulty in controlling his sexually violent behavior.

Clerk's Papers (CP) at 991.

[7] Pouncy proposed defining "personality disorder" as follows: "A Personality Disorder is an enduring pattern of inner experience and behavior that deviates markedly from the expectations of the individual's culture, is pervasive and inflexible, has an onset in adolescence or early adulthood, is stable over time, and leads to distress or impairment." CP at 730.

of the applicable law. *Greenwood*, 130 Wn. App. at 287; *Twining*, 77 Wn. App. at 894 (citing *Caruso v. Local 690, Int'l Bhd. of Teamsters*, 107 Wn.2d 524, 529, 730 P.2d 1299 (1987)).

■ ¶22 The argument advanced by Pouncy was previously rejected in *Twining*, 77 Wn. App. at 895-96. The trial court did not abuse its discretion by following authority of such long-standing duration.

## IV

■ ¶23 Pouncy next contends that the trial court improperly commented on the evidence by admitting testimony about the Yakima court's factual findings, critical of Dr. Wollert's methodology, from an unrelated proceeding. Pouncy argues, without supporting authority, that "a judicial comment on the evidence does not cease to be one simply because the comment comes from a judge that is not presiding over the trial." Br. of Appellant at 14. The State, relying on *State v. Gentry*, 125 Wn.2d 570, 888 P.2d 1105 (1995), counters that testimony regarding the Yakima court's factual findings was simply evidence, and that the trial court ruled on its admissibility without displaying to the jury the trial court's attitude about the merits of the case. Thus, the State contends, the trial court did not comment on the evidence. We agree with the State.

¶24 The Washington Constitution provides, "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." CONST. art. IV, § 16. "A statement by the court constitutes a comment on the evidence if the court's attitude toward the merits of the case or the court's evaluation relative to the disputed issue is inferable from the statement." *State v. Lane*, 125 Wn.2d 825, 838, 889 P.2d 929 (1995). "The touchstone of error in a *trial court's comment* on the evidence is whether the feeling of *the trial court* as to the truth value of the testimony of a witness has been communicated to the jury." *Lane*, 125 Wn.2d at 838 (emphasis added). "The purpose of prohibit-

ing judicial comments on the evidence is to prevent the *trial judge's opinion* from influencing the jury." *Lane*, 125 Wn.2d at 838 (emphasis added). A court does not comment on the evidence simply by giving its reasons for a ruling. *State v. Dykstra*, 127 Wn. App. 1, 8, 110 P.3d 758 (2005) (citing *State v. Cerny*, 78 Wn.2d 845, 855-56, 480 P.2d 199 (1971)), *review denied*, 156 Wn.2d 1004 (2006).

¶25 In *Gentry*, the defendant contended that the admission of the defendant's judgment and sentence form from a prior case was an improper comment on the evidence because the judge's signature on the judgment and sentence form demonstrated that the sentencing judge from the prior case was the current trial judge. *Gentry*, 125 Wn.2d at 638. Our Supreme Court rejected this argument, noting that "the judgment and sentence of the prior rape was not a comment on the evidence; it *was* the evidence." *Gentry*, 125 Wn.2d at 639. The court stated that "[t]he admission of evidence, standing alone, cannot be considered an unconstitutional comment on the evidence." *Gentry*, 125 Wn.2d at 639.

¶26 Here, the trial court's admission of the Yakima court's factual findings did not constitute an unconstitutional comment on the evidence. The trial court did not improperly comment on the evidence simply by making an evidentiary ruling on admissibility. Pouncy's claim, therefore, fails.

V

¶27 Pouncy is correct, however, in contending that the testimony concerning the Yakima court's findings of fact was improperly admitted. His objection to that testimony should have been sustained.

¶28 The cross-examination leading to the State's questions concerning the Yakima court's factual findings was focused on attacking Dr. Wollert's methodology. The State first confirmed that Dr. Wollert used the Null hypothesis in evaluating Pouncy. Next, the State had Dr. Wollert confirm

that another expert in the field, Dr. Hanson, opined in a letter that Dr. Wollert's use of the Null hypothesis was unique to him. Then, the State elicited testimony that Dr. Hanson "was not convinced that [Dr. Wollert's] approach is an improvement over existing practice or that it has a robust logical foundation." VRP (Oct. 10, 2006) at 158.

¶29 At this point, the State began its questioning regarding the Yakima court's factual findings by eliciting confirmation from Dr. Wollert that he had "testified in a case of In Re: Robinson," that he had testified about the Null hypothesis in the Robinson case, and that the Robinson matter's factual "findings and conclusions came out in March of 2006." VRP (Oct. 10, 2006) at 159-60. The State then handed Dr. Wollert a proposed exhibit identified as "156." VRP (Oct. 10, 2006) at 160. The State then directed Dr. Wollert to "look at finding of fact number 19" in the proposed exhibit, while commenting that "it states, Dr. Wollert's methods of assessing the impact of age on recidivism are generally not accepted in the—" VRP (Oct. 10, 2006) at 160-61. At this point, defense counsel interposed an objection on the basis of foundation.

¶30 Viewed in context, it is apparent that the State was seeking to introduce the Robinson findings of fact on the question of whether Dr. Wollert, an expert witness, had acted consistent with the standards of his profession in interviewing and evaluating Pouncy. This is a matter for expert testimony, not lay testimony. *See State v. Willis*, 151 Wn.2d 255, 87 P.3d 1164 (2004). Again, viewed in context, it is apparent that Pouncy's counsel's objection to the questioning, based on a lack of foundation, was premised upon the State's failure to qualify the Yakima judge as an expert witness in the areas of sex offender evaluation and psychology. This objection was properly made.

¶31 The admission of expert testimony is governed by ER 702, which provides, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,

training, or education, may testify thereto in the form of an opinion or otherwise."

¶32 Before testifying as an expert, the witness is subject to the requirements of ER 702. *State v. Lord,* 161 Wn.2d 276, 294 n.15, 165 P.3d 1251 (2007). Thus, expert testimony is admissible under ER 702 where (1) the witness qualifies as an expert and (2) the expert's testimony would be helpful to the trier of fact. *State v. Riker,* 123 Wn.2d 351, 364, 869 P.2d 43 (1994). "Judges do not have the expertise required to decide whether a challenged scientific theory is correct." *State v. Wilbur-Bobb,* 134 Wn. App. 627, 632, 141 P.3d 665 (2006). Pouncy's objection should have been sustained.

¶33 Later in the trial, the court mentioned that it would have sustained Pouncy's objection had it been made on the basis of relevance. This would have also been a proper basis for objection. Our Supreme Court has previously explained the relationship between relevance and ER 702's helpfulness requirement:

> Helpfulness and relevancy are intricately intertwined:
>
> > The helpfulness test subsumes a relevancy analysis. In making its determination, the court must proceed on a case-by-case basis. Its conclusions will depend on (1) the court's evaluation of the state of knowledge presently existing about the subject of the proposed testimony and (2) on the court's appraisal of the facts of the case.

*Riker,* 123 Wn.2d at 364 (quoting *State v. Reynolds,* 235 Neb. 662, 683, 457 N.W.2d 405 (1990)). It is apparent that where opinion testimony is given by a witness who is not qualified to testify to such an opinion, the testimony given is, by definition, not helpful to the finder of fact.

¶34 Here, the trial court was correct when it mused in reflection that the Yakima court's factual findings were not relevant. At the same time, Pouncy's objection based on lack of foundation was also correctly interposed. That objection should have been sustained.

¶35 On appeal, the State attempts to justify its questioning about the Yakima court's factual findings as simply

being appropriate cross-examination of Dr. Wollert. We further address this situation to reinforce that this is not so.

¶36 In addition to the two grounds previously discussed, testimony about and evidence of the Yakima court's factual findings were also inadmissible because such testimony or evidence constituted hearsay. Hearsay is an oral or written assertion, "other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is inadmissible unless it falls within certain exceptions. ER 802. Hearsay may not be incorporated into questions asked for impeachment purposes. *Wash. Irrigation & Dev. Co. v. Sherman*, 106 Wn.2d 685, 687-88, 724 P.2d 997 (1986).

¶37 It is well established that "judicial findings in other cases proffered as evidence are generally characterized as inadmissible hearsay. *See, e.g., McCormick on Evidence* § 318, at p. 894 (3d ed.1984). No specific exceptions apply under the Federal Rules of Evidence." *Blue Cross & Blue Shield of N.J., Inc. v. Phillip Morris, Inc.*, 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001); *accord Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993); *Greycas, Inc. v. Proud*, 826 F.2d 1560, 1567 (7th Cir. 1987). Moreover, as noted in the *Blue Cross* case, "[e]xcluding credibility assessing statements by judges in other cases avoids the practical difficulty of weighing judicial opinions against contrary evidence." *Blue Cross*, 141 F. Supp. 2d at 323. Indeed, the "difficulty in assessing the probative force of comments by a judge on the credibility of a witness is especially great for a jury, which may give exaggerated weight to a judge's supposed expertise on such matters." *Blue Cross*, 141 F. Supp. 2d at 323.

¶38 The inappropriateness of seeking the introduction of such testimony has long been recognized:

> The obvious purpose was to induce the jury to believe that, as the testimony of the witness as given before them had already been discredited by three judges sitting in the same court in another case, that, therefore, they should discredit it in this

case, a wholly unwarranted conclusion unsupported by any authority with which we are familiar.

*Newton v. State*, 147 Md. 71, 127 A. 123, 131 (1924).

¶39 As the *Blue Cross* court discussed:

Unlike the scientific community's process of peer review, there is no practical way for a scientist to defend against a judge's assessments of credibility. Accordingly, courts have also excluded out-of-court statements by judges under Rule 403 (undue prejudice) and Rule 605 (prohibiting judges as witnesses).

*Blue Cross*, 141 F. Supp. 2d at 324. As artfully summarized in that case:

The proposed evidence is inadmissible. It is also unfair. When a judge attacks a witness there is no effective defense. Peer review of such witnesses is different; if an expert does not act properly that expert ought to be attacked in the normal course of scientific debate—or in the case of a trial, with the opportunity for rehabilitation and explanation. To appropriately meet the evaluations of another judge would require the jury to delve deeply into the case that judge was trying. This enterprise is not appropriate under Rule 403.

. . . .

In this case the cross examination of the witness was blistering and lasted more than a full trial day. An extensive deposition and exchange of reports provided ample fuel for the broad-based attack on the expert's credibility. Defendants' experts will continue the attack. They do not need another judge as an ally.

*Blue Cross*, 141 F. Supp. 2d at 325.[8]

---

[8] In his opening brief, Pouncy assigns error to the admission of this evidence. However, his issue statements focus on two claims: (1) admission of the evidence constituted a comment on the evidence and (2) his trial counsel provided ineffective assistance by objecting on the basis of foundation rather than relevance. This latter claim necessarily requires that we evaluate the propriety of trial counsel's action. As discussed, we conclude that trial counsel's objection was well taken.

Under these circumstances, in which the issue was directly addressed to the trial court but only indirectly addressed to us, it is appropriate that we resolve the

## VI

¶40 For all of the reasons set forth above, the State's questions about, and utilization of, the Yakima court's findings of fact was improper. The trial court erred by allowing such questioning. Accordingly, a new trial is required.

¶41 Reversed.

BECKER and APPELWICK, JJ., concur.

Review granted at 165 Wn.2d 1007 (2008).

issue. *See Falk v. Keene Corp.*, 113 Wn.2d 645, 659, 782 P.2d 974 (1989) ("An appellate court has inherent authority to consider issues which the parties have not raised if doing so is necessary to a proper decision."); *Alverado v. Wash. Pub. Power Supply Sys.*, 111 Wn.2d 424, 429, 759 P.2d 427 (1998) (same); *accord State v. Aho*, 137 Wn.2d 736, 741, 975 P.2d 512 (1999) ("This court may raise an issue sua sponte and rest its decision on that issue."); *Greengo v. Pub. Employees Mut. Ins. Co.*, 135 Wn.2d 799, 813, 959 P.2d 657 (1998) (same).