[Nos. 12162-3-III; 11499-6-III.   Division Three.   April 20, 1995.]

*In the Matter of the Detention of*
STEPHEN J. TWINING, *Appellant.*

*In the Matter of the Personal Restraint of*
STEPHEN J. TWINING, *Petitioner.*

*Hugh M. Spall, Jr.,* for Twining.

*Christine O. Gregoire, Attorney General,* and *Donald J. Porter, Assistant,* for State.

SWEENEY, A.C.J. — Stephen Twining appeals his civil commitment as a sexually violent predator. He contends: (1) the sexually violent predators statute, RCW 71.09, violates the equal protection clause; (2) the court erred in refusing to allow his expert witness to testify; (3) the State's expert witness did not testify on a more likely than not basis that Mr. Twining had a mental abnormality or personality defect which rendered him a sexual predator; (4) testimony concerning a sexual deviancy treatment was improperly excluded; (5) the court erred in excluding jury instructions on the presumption that he is not a predator and defining personality disorder; and (6) the jury selection process did not comply with due process. Mr. Twining also contends in a personal restraint petition that (7) he should be allowed to withdraw his guilty pleas to first degree rape and attempted indecent liberties because he was not informed that involuntary commitment as a sexually violent predator could be a direct consequence of those pleas, and (8) the sexual predator proceeding violates protections against double jeopardy. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

Over the course of 2 years, Mr. Twining pleaded guilty to attempted indecent liberties, first degree statutory rape, communicating with a minor for immoral purposes, indecent liberties, and second degree burglary. Mr. Twining was 17 years old when he was convicted for indecent liberties with an 8-year-old girl. Within about a month after his release in August 1986, Mr. Twining committed first degree statutory rape of a 4-year-old boy. This assault was not discovered for some time. In September 1986, he committed a burglary and in October 1986 he fondled a 4-year-old girl. He pleaded

guilty to both crimes. Approximately a week after his release on February 6, 1987, for these crimes, Mr. Twining attacked an 8-year-old girl in a public library bathroom. He reportedly threw the girl against the wall and threatened to kill her if she did not pull down her pants. A passerby heard her screaming and stopped the attack. On April 28, 1987, Mr. Twining pleaded guilty to attempted indecent liberties and the earlier statutory rape of the 4-year-old boy. He was ordered incarcerated for 4 years.

Prior to Mr. Twining's release from custody, the State filed a civil action in superior court in March 1991 accusing him of being a sexually violent predator pursuant to RCW 71.09.020.[1] The parties tried the issue to a jury. The State presented the testimony of several victims, their families, investigative police officers and an expert witness, Dr. Irwin Dreiblatt. Dr. Dreiblatt is a clinical psychologist who specializes in deviant behavior. Approximately two-thirds of his practice is devoted to evaluation and therapy for sexual misconduct. Mr. Twining refused to allow Dr. Dreiblatt to interview him. On the basis of Department of Corrections records for juvenile and adult convictions, police records, out-patient juvenile mental health treatment reports, evaluations from the sex offender program at Western State Hospital, two psychological evaluations by a Department of Corrections psychologist, and reports from the Special Commitment Center (SCC) made during custodial detention, Dr. Dreiblatt stated it was his "diagnostic impression" that Mr. Twining suffered from a mental abnormality identified as paraphilia and a "personality disorder not otherwise specified". In his opinion, it was "more likely than not" that Mr. Twining would engage in future predatory acts of sexual violence against children.

---

[1]A sexually violent predator is a person "who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence." RCW 71.09.020(1).

The order of commitment to the Special Commitment Center for evaluation after the probable cause hearing, RCW 71.09.040, is not contained in the record. Mr. Twining does not raise the issue of the adequacy of the notice for the probable cause hearing or his right to defend at the hearing.

Mr. Twining presented the testimony of a woman who had corresponded with him while he was incarcerated (she stated he made romantic overtures to her), his uncle (who stated Mr. Twining had "matured" while in prison) and Dr. Henry Cellini. Dr. Cellini, who has a Ph.D. in educational psychology, had taken one class in sexual deviancy and three classes in basic statistics during his doctoral studies. He was not a board certified psychologist in any state; however, he worked as a trainer and research consultant for criminal justice agencies in the areas of violence and drug abuse in New Mexico. Mr. Twining intended to elicit Dr. Cellini's opinion that future dangerousness could not be accurately predicted and that the statistical studies relied on by Dr. Dreiblatt were statistically unsound. After voir dire and an examination of Dr. Cellini's deposition, the court excluded his testimony, finding that his opinion on future dangerousness was not based on demonstrably reliable methodology or principles and that his opinion on statistical reliability was not based on experience or personal research.

After the court excluded Dr. Cellini's testimony, Mr. Twining moved to strike Dr. Dreiblatt's testimony on the ground that Dr. Dreiblatt did not define "reasonable psychological certainty" as "more likely than not". The court denied the motion. The court also excluded two jury instructions over Mr. Twining's objections. One defined "personality disorders" pursuant to a diagnostic manual and the other instructed the jury to presume Mr. Twining was not a sexually violent predator.

The jury found that Mr. Twining was a sexually violent predator and the court committed him "until such time as [his] mental abnormality or personality disorder has so changed that [he] is safe to be at large."

### ANALYSIS

Mr. Twining first contends the sexually violent predators statute, RCW 71.09, violates equal protection because it distinguishes between those individuals likely to engage in sexually violent predatory acts who were charged or convicted with a crime of sexual violence, and those individuals likely to engage in sexually violent predation whose crimes were

not discovered until after the statute of limitations had run. He argues there is no reasonable basis for creating two such classes.

■ ■ The equal protection clause of the Fourteenth Amendment and article 1, section 12 of our constitution require that "persons similarly situated with respect to the legitimate purposes of the laws receive like treatment". *In re Knapp*, 102 Wn.2d 466, 473, 687 P.2d 1145 (1984), *quoted in In re Young*, 122 Wn.2d 1, 44, 857 P.2d 989 (1993). In *Young*, the court held that sexual predators were considerably more dangerous than the mentally ill and that this distinction, along with the different treatment for the two populations, was rationally related to the distinctions between the two classes under their respective statutes. *Young*, at 44-45. The court noted that equal protection does not require identical treatment for all persons, but that when a classification is made, it must have some relevance to the purpose for which it is made. *Young*, at 45; *Baxtrom v. Herold*, 383 U.S. 107, 111, 15 L. Ed. 2d 620, 86 S. Ct. 760 (1966).

■ We find that the limitation of sexual predator commitment to those persons who have a history of sexual violence charges or convictions is relevant to the purpose of this statute. The sexually violent predator legislation is directed toward "a small but extremely dangerous group of sexually violent predators . . . who do not have a mental disease or defect that renders them appropriate for the existing involuntary treatment act . . .". RCW 71.09.010. In order to more clearly define the class, the Legislature requires that the suspected sexual predator must not only suffer from a mental abnormality or personality disorder which makes him or her likely to commit predatory acts of sexual violence, but must have been convicted or charged with a crime of sexual violence. RCW 71.09.020(1). By limiting commitment to those persons who have a history of sexually violent crimes, the Legislature assured commitment of only those who pose the most serious threat to society.

Mr. Twining next contends the court erred in excluding the testimony of his expert witness, Dr. Cellini. He contends

he has a statutory right to obtain an expert to participate in his defense and the court abused its discretion in excluding Dr. Cellini.

■ RCW 71.09.050 provides that in the case of an indigent defendant, the court shall, "upon the person's request", assist the defendant in obtaining "an expert or professional person" to participate in defending against a sexual predator commitment. Expert witness testimony is admissible if (1) the witness qualifies as an expert, and (2) the expert testimony is helpful to the trier of fact. ER 702; *Young*, at 57-58; *State v. Cauthron*, 120 Wn.2d 879, 890, 846 P.2d 502 (1993). The determination of whether expert testimony is admissible is within the discretion of the trial court and will not be disturbed absent an abuse of discretion. *Young*, at 57.

Mr. Twining is granted the statutory right to an expert or professional if he requests one. RCW 71.09.050. The expert's qualifications must, however, comply with the Rules of Evidence, particularly ER 702. Dr. Cellini is not a board certified psychologist and does not practice psychology (although he is employed as the "chief psychologist" of the New Mexico prison system). In his deposition he admitted that he had not read all the studies on future dangerousness. He stated that he found the studies he had read unreliable. And he did not demonstrate the methodology or scientific basis for his theory on forecasting recidivism.

Mr. Twining argues that a witness need not possess academic credentials if " '[p]ractical experience in a given area can qualify a witness as an expert.' " *State v. Simon*, 64 Wn. App. 948, 963, 831 P.2d 139 (1991) (quoting *State v. Smith*, 88 Wn.2d 639, 647, 564 P.2d 1154 (1977), *overruled on other grounds by State v. Jones*, 99 Wn.2d 735, 664 P.2d 1216 (1983)), *aff'd in part, rev'd in part*, 120 Wn.2d 196, 840 P.2d 172 (1992). In *Simon*, however, the expert was a police officer who testified as to his experience with prostitution related crimes and in *Smith* the expert was a medical doctor who had practical experience prescribing antipsychotic medication and was allowed to testify as to the effects of withdrawal.

■■ Psychiatric or psychological testimony is central to the ultimate question here: whether Mr. Twining suffers from a mental abnormality or personality disorder which makes him likely to engage in predatory acts of sexual violence. *Young*, at 58. At trial, Dr. Cellini admitted he could not testify as a psychologist or give his opinion as a psychologist. The court found that his deposition testimony demonstrated that Dr. Cellini's opinions on the reliability of and statistical basis for predictions of future dangerousness were based on speculation and conjecture, not on any demonstrated research or methodology. It is no abuse of discretion for the court to exclude expert testimony if the expert has inadequately familiarized himself or herself with the data and facts essential to forming a reasonable opinion. 5A Karl B. Tegland, Wash. Prac., *Evidence Law and Practice* § 297 (3d ed. 1989).

Exclusion of an expert witness for improper foundation is not tantamount to denial of the right to request an expert pursuant to RCW 71.09.050. Mr. Twining's reliance on *Ake v. Oklahoma*, 470 U.S. 68, 84 L. Ed. 2d 53, 105 S. Ct. 1087 (1985) and *State v. Poulsen*, 45 Wn. App. 706, 726 P.2d 1036 (1986) is misplaced. In both cases, the trial court refused a request to appoint an expert in psychology or psychiatry. Here, the court refused to admit testimony of an expert who was neither a psychologist nor psychiatrist. Mr. Twining retained the right to request appointment of such an expert after exclusion of Dr. Cellini. He neither requested another expert nor a continuance to find another himself.

Mr. Twining next assigns error to the court's refusal to strike Dr. Dreiblatt's opinion of the likelihood that Mr. Twining suffered from a mental abnormality or personality disorder. When asked if he had formulated an opinion "with a reasonable degree of psychological certainty" whether Mr. Twining suffered from a mental abnormality, Dr. Dreiblatt responded that it was his "diagnostic impression that he suffered from a mental abnormality as defined in the statute". He formed the same "diagnostic impression" that Mr. Twining suffered from a personality disorder under the cate-

gory "not otherwise specified". Dr. Dreiblatt then testified that he did not think "reasonable psychological certainty" meant the same as "more likely than not" but that it meant "given the information you have that you can be reasonably certain of your findings".

The decision to admit or exclude expert testimony is within the discretion of the trial court. *Young*, at 57. Expert opinion testimony concerning a person's mental status is not admissible unless the expert holds his or her opinion with reasonable medical and psychological certainty. *State v. Martin*, 14 Wn. App. 74, 76-77, 538 P.2d 873 (1975), *review denied*, 86 Wn.2d 1009 (1976). In *Orcutt v. Spokane Cy.*, 58 Wn.2d 846, 364 P.2d 1102 (1961), a case relied on by Mr. Twining, the court held that medical testimony to establish a causal connection between an injury and a subsequent condition must show that the injury "probably" or "more likely than not" caused the condition rather than "might have", "could have", or "possibly did". *Orcutt*, at 853. From this, later cases interpreted "reasonable medical certainty" to mean "more likely than not". *See, e.g., State v. Terry*, 10 Wn. App. 874, 884, 520 P.2d 1397 (1974) (pathologist who stated he could not give an opinion on the cause of death with "reasonable medical certainty" could testify that a particular cause of death was "more probable than not", satisfying the standard). Both *Martin* and *Terry* indicate, however, that if the expert's opinion exhibits reasonable medical certainty, the standard is met. *Martin*, at 76-77; *Terry*, at 884.

Dr. Dreiblatt testified that his review of the police and Department of Corrections records; evaluations from an outpatient juvenile treatment program, a sex offender program and a Department of Corrections psychologist; and reports from the SCC led him to the diagnostic impression that Mr. Twining met the statutory definition of mental abnormality.[2] Using the frequently relied upon standards of the American

---

[2] "'Mental abnormality' means a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to the commission of criminal sexual acts in a degree constituting such person a menace to the health and safety of others." RCW 71.09.020(2).

Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (3d rev. ed. 1987) (DSM-III-R), Dr. Dreiblatt testified that Mr. Twining suffered the mental abnormality "paraphilia", a sexual disorder involving intense sexual arousal toward objects or people outside normative patterns. He testified that the records show Mr. Twining's particular forms of paraphilia are pedophilia (intense sexual urges toward children) and exhibitionism.

Pedophilia was described as an acquired condition which affects emotional or volitional capacity, predisposing the pedophile to commit sexual crimes against children. Dr. Dreiblatt testified that if a person commits sexual crimes against children repeatedly, his or her condition is considered "severe pedophilia". Based on Mr. Twining's admission of seven offenses against seven children and the escalation of the behavior over time, Dr. Dreiblatt testified his diagnostic impression was that Mr. Twining suffered from a mental abnormality in the form of severe pedophilia which predisposes him to commit sexual crimes against children.[3]

Dr. Dreiblatt also testified that Mr. Twining fit the DSM-III-R definition of a personality disorder "not otherwise specified", meaning he fit into more than one personality disorder. He stated Mr. Twining demonstrated the antisocial personality traits of early conduct problems, impulsive acts, inability to tolerate frustration, and lack of remorse, as well as some schizoid traits. He concluded that his review of the records, documents, and evaluations led him to the diagnostic impression Mr. Twining had a personality disorder with antisocial traits which made it likely he would engage in unlawful behavior.

■ Substantial evidence supports Dr. Dreiblatt's expert opinion that Mr. Twining suffers both a mental abnormality and a personality disorder. Dr. Dreiblatt testified that the mental abnormality made it "more likely than not" that Mr. Twining would engage in future predatory acts of sexual

---

[3]Mr. Twining was previously diagnosed with pedophilia while at Western State Hospital in 1987, while at Twin Rivers Correctional Institute in 1988, and while at the SCC.

violence against young children. Ultimately, Dr. Dreiblatt testified that his education, experience, familiarity with relevant literature, and review of Mr. Twining's offenses and psychological evaluations led him to form his opinion with a "reasonable degree of psychological certainty" that Mr. Twining suffers from a mental abnormality and/or a personality disorder which made him likely to engage in predatory acts of sexual violence. Dr. Dreiblatt's testimony exhibits "reasonable psychological certainty" that he formed a valid diagnostic impression.

Mr. Twining also assigns error to the court's exclusion of evidence he attempted to develop during cross examination of Dr. Dreiblatt. He attempted to ask Dr. Dreiblatt about a particular kind of sexual deviancy treatment called "covert sensitization". This form of "aversion" treatment involves having the subject masturbate to ejaculation while focusing on appropriate sexual fantasies. The court sustained the State's objection to this line of questioning as irrelevant. Mr. Twining contends an essential element of his defense was to raise a reasonable doubt that he was likely to reoffend. By denying him the opportunity to develop the possibility that Mr. Twining had self-treated himself with covert sensitization during the last 4 years of incarceration, he argues, the court prevented him from presenting a viable defense.

██ Generally, all relevant evidence is admissible and all irrelevant evidence is inadmissible. ER 402; *In re Young*, 122 Wn.2d 1, 53, 857 P.2d 989 (1993). ER 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence". Determinations of relevance are within the discretion of the trial court and will not be disturbed absent abuse of discretion. *Young*, at 53; *State v. Swan*, 114 Wn.2d 613, 658, 790 P.2d 610 (1990), *cert. denied*, 498 U.S. 1046 (1991). A court abuses its discretion only when its discretionary decision is manifestly unreasonable or based on untenable grounds. *Industrial Indem. Co. of Northwest, Inc. v. Kallevig*, 114 Wn.2d 907, 926, 792 P.2d 520, 7 A.L.R.5th 1014 (1990).

Mr. Twining intended to elicit from Dr. Dreiblatt that it was possible Mr. Twining had engaged in self-treatment during his last 4 years in prison, which would raise a reasonable doubt that he was likely to reoffend. He could not, however, show that he participated in a structured sexual deviancy treatment program involving covert sensitization. The most he could argue was that he masturbated while reading Playboy and Hustler magazines and fantasizing about age-appropriate females. No facts were offered to support this theory. Considering the little probative value of this line of questioning, the court's decision to exclude this testimony was not "manifestly unreasonable". *Industrial Indem. Co.*, at 926.

Next, Mr. Twining contends the trial court erred in excluding two jury instructions: one which states that Mr. Twining is presumed not to be a sexual predator and another which defines personality disorder according to a definition found in the DSM-III-R.[4]

■ Jury instructions are not erroneous if they allow each party to argue his or her theory of the case, are not misleading and, when read as a whole, inform the jury of the applicable law. *Caruso v. Local 690, Int'l Bhd. of Teamsters*, 107 Wn.2d 524, 529, 730 P.2d 1299, *cert. denied*, 484 U.S. 815 (1987). An error in jury instructions does not require reversal "unless it affects, or presumptively affects, the outcome of the trial". *Brown v. Spokane Cy. Fire Protec. Dist. 1*, 100 Wn.2d 188, 196, 668 P.2d 571 (1983).

■ A. Presumption. Although the court instructed the jury that the State must prove beyond a reasonable doubt

---

[4]Mr. Twining's proposed instructions included the following:

"Instruction No. 2

"The respondent denies the prosecution's allegation that he is a 'sexually violent predator.' That denial puts in issue every element of the allegation. The state is the plaintiff and has the burden of proving each element of the allegation beyond a reasonable doubt.

"The respondent is presumed not to be a 'sexually violent predator.' This presumption continues through the entire trial unless you find it has been overcome by the evidence beyond a reasonable doubt."

"Instruction No. 10

" 'Personality Disorder' means inflexible and maladaptive personality traits that cause either significant functional impairment or subjective distress."

that Mr. Twining is a sexual predator, the court refused to instruct the jury that he is not presumed to be a sexually violent predator, noting that there is no such presumption in the law. A trial pursuant to RCW 71.09, although a civil action, requires by statute or implication certain criminal rights, such as the beyond reasonable doubt standard, the consideration of less restrictive alternatives to confinement and unanimity of verdict. Other criminal protections, such as the Fifth Amendment right to remain silent and additional peremptory jury challenges, are not applicable. *Young*, at 47-51.

The presumption of innocence in criminal trials is closely related to the State's burden to prove each element of a crime beyond a reasonable doubt. However, the presumption of innocence instruction "conveys to the jury a special and additional caution to consider only the evidence before them and not to surmise anything based on a defendant's present situation." *In re Lile*, 100 Wn.2d 224, 227, 668 P.2d 581 (1983). Mr. Twining contends the sexual predator action requires a similar presumption that the defendant is not a sexual predator. The short answer is that this is not a criminal case, and criminal constitutional protections are not applicable beyond those supplied in the statute and those granted in *Young*. *See* RCW 71.09.060; *Young*, at 47-51.

B. Definition of personality disorder. Both the State and Mr. Twining offered instructions defining mental abnormality and personality disorder. Their definitions of mental abnormality closely conformed to the definition in the statute. RCW 71.09.020(2). The statute does not, however, define personality disorder. After considering both definitions of personality disorder, the court decided to exclude an instruction on that term, leaving it to the parties to argue their definitions in closing.

■■ ■■ Whether to give a proposed instruction is within the discretion of the trial court. *Seattle Western Indus., Inc. v. David A. Mowat Co.*, 110 Wn.2d 1, 9, 750 P.2d 245 (1988); *Thomas v. Wilfac, Inc.*, 65 Wn. App. 255, 264, 828 P.2d 597, *review denied*, 119 Wn.2d 1020 (1992). We find no abuse here. Mr. Twining cites *State v. Allen*, 101 Wn.2d 355, 678

P.2d 798 (1984) for the proposition that undefined terms may lead the jury to supply its own definition rather than an objective legal standard. *Allen,* at 361-62. In *Allen,* however, the court was talking about statutorily defined terms with specific legal definitions. Here, the definition of personality disorder is not so defined.

Finally, Mr. Twining contends the jury selection process in Kittitas County Superior Court was not random because it allowed panel members to choose when they wanted to serve, resulting in overrepresentation of certain occupational groups— in particular, seasonal workers — and allowing jurors to pick the time period of Mr. Twining's highly publicized trial.

Washington statutes mandate that selection of a jury panel be random. *See, e.g.,* RCW 2.36.010(9) (a "master list" of prospective jurors must be randomly selected) and RCW 2.36.010(12) (a jury panel is composed of persons randomly selected for jury service). RCW 2.36.065 provides that it is the duty of the superior court judges to ensure random selection of the master jury list and the jury panels and requires judges to periodically review the process. Further, the statute provides that "[n]othing in this chapter shall be construed as requiring uniform . . . method throughout the state, so long as fair and random selection of the master jury list and jury panels is achieved." *See also State v. Tingdale,* 117 Wn.2d 595, 600 n.3, 817 P.2d 850 (1991). While it is the policy of the State to include as many residents as possible in the jury process, it is also the policy of the State to minimize the burden on prospective jurors, their families, and their employers. RCW 2.36.080(2).

The prospective jurors in this trial were part of a list of 600 randomly selected people who were sent letters which included a section where they could request exemptions. Some jurors wrote back asking the court to "consider dates of unavailability and/or inconvenience . . .". The court reviewed those requests without regard to who made them and decided whether or not to accommodate them. After the remaining responses were randomly divided into equal piles for the sub-panels assigned to particular trial periods, those

who had indicated unavailability during a particular period were placed in any one of the other periods at random.

Mr. Twining attempts to infer an unbalanced jury panel here by arguing the voir dire revealed the following "strange composition" of panel members:

The voir dire revealed that 44 [of the 73] members of the panel either had close friends or relatives who worked with the Department of Social and Health Services, the agency that administers the [SCC], had heard of the sexual predator law, had heard of the [SCC], had close friends or relatives of sexual assault victims, had been involved in legal proceedings or investigation of sexual assault crimes, had consulted or been treated by a psychiatrist or psychologist, had close friends or relatives with mental illness, had opinions regarding sexual assault victims, or had opinions regarding those accused of sexual assaults.

Mr. Twining can offer no evidence beyond speculation of non-randomness in the Kittitas County jury selection process.

Mr. Twining's personal restraint petition is barred because it was brought beyond 1 year after the judgments and sentences on his guilty pleas and does not come within the exceptions of RCW 10.73.100.

Affirmed. The personal restraint petition is dismissed.

MUNSON and SCHULTHEIS, JJ., concur.

Review denied at 127 Wn.2d 1018 (1995).