# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
            )   No. 71261-6-I
     Respondent, )
            )   DIVISION ONE
   v. )
            )   UNPUBLISHED OPINION
DEANTHONY DARNELL FRANKS, )
            )
     Appellant. )   FILED: July 27, 2015
_____ )

TRICKEY, J. — DeAnthony Franks appeals his conviction for residential burglary. Franks argues that the trial court erred by (1) failing to instruct the jury on the lesser included offense of criminal trespass in the first degree; (2) denying his request for a Frye[1] hearing regarding the admissibility of fingerprint comparison evidence; and (3) admitting hearsay statements of two fingerprint examiners regarding their prior experience testifying as expert witnesses. But the evidence did not support a lesser-included instruction and the trial court did not err in admitting the fingerprint examiners' testimony regarding their qualifications and conclusions. We affirm.

## FACTS

At approximately 1:00 p.m. on May 15, 2012, Spiros Sourelos was working in the backyard of his Seattle home when he heard a loud bang. Sourelos noticed that the side door to the house belonging to his next-door neighbor, Starvos Tsitsis, was "busted." Knowing that Tsitsis was at work, Sourelos called 911.

Deputies Martin Hodge and Kurt Lysen from the King County Sheriff's Office were dispatched to the home at 1:27 p.m. and arrived approximately five minutes later. As the

---

[1] Frye v. United States, 293 F. 1013 (D.C. Cir.1923).

officers arrived, Sourelos saw a black male stick his head out of the front door and then quickly retreat back inside.

Deputy Hodge observed that the side door was open and there were "obviously signs of forced entry, broken wood, things like that."[2] The officers entered the house and announced their presence. Hearing noises from the master bedroom, Deputy Hodge proceeded to the rear of the house. As soon as he opened the bedroom door, Deputy Hodge saw someone jump out of a window. Deputy Hodge described the individual as a teenaged black male of average build, with braids or dreadlocks, wearing a black sweatshirt, and black athletic-style pants with a white stripe. As Deputy Hodge pursued the individual out of the window, the individual jumped over the backyard fence and fled.

Deputy Lysen, who has investigated approximately 25,000 residential burglaries in his 33 years of experience with the King County Sheriff's Office, testified that most burglaries happen during the day when homeowners are at work. He also testified that burglars typically open drawers looking for things to steal and will frequently "help themselves" to food and alcohol found in the home "and then leave it behind."[3] Deputy Lysen found a wine bottle, which appeared to have been drunk from, on the floor of the living room. He also found an open bag of beef jerky elsewhere in the home. Deputy Lysen dusted the master bedroom window, the wine bottle, and the beef jerky bag for fingerprints.

When Tsitsis returned to the house after being notified of the burglary, he noticed that the closet doors in his bedroom as well as his desk drawer were open. He also

---

[2] Report of Proceedings (RP) (Feb. 26, 2013) at 12.
[3] RP (Feb. 26, 2013) at 55.

noticed that a bag of beef jerky he had purchased and placed on the kitchen counter was now lying on his bed and a bottle of wine from his wine rack was in the center of the living room. A spare key to Tsitsis's car, which Tsitsis had last seen on his desk, was missing.[4] No other items were taken.

Deputy Paul Thiede was dispatched to the house at 1:37 p.m. En route, Deputy Thiede encountered Franks, approximately 12 blocks from Tsitsis's house. Deputy Thiede estimated it would take approximately two minutes to run there from the scene of the burglary. Deputy Thiede stopped Franks and asked him for his name and date of birth. Franks "appeared to be nervous."[5] Franks matched the description of the burglary suspect except for the stripe on his pants. Not fully confident he had the right person, Deputy Thiede did not arrest or search Franks.

Kathleen Swihart, a latent fingerprint examiner with the King County Sheriff's Office, examined the latent prints left on the window, wine bottle, and beef jerky bag using the ACE-V method. Swihart explained that ACE-V is an acronym for "analysis, comparison, evaluation, and verification" and is the standard method of fingerprint identification accepted in the scientific community.[6] Using the ACE-V method, a fingerprint examiner first analyzes a fingerprint with a magnifying glass to determine whether there is a sufficient quantity and quality of detail in the fingerprint to proceed. Next, the examiner compares the latent prints with a known fingerprint. The examiner

---

[4] Tsitsis testified that his young nephew had recently been playing with the key and could possibly have misplaced it. The key was later found in a yard in Tsitsis's neighborhood.
[5] RP (Feb. 26, 2013) at 105.
[6] RP (Feb. 27, 2013) at 117.

then evaluates whether there is sufficient similarity between the fingerprints to declare a match. Finally, a second examiner independently verifies the conclusions of the first.

Swihart analyzed the latent prints and concluded that three of the latent prints lifted from the beef jerky bag matched Franks's right thumb, left palm, and left little finger, respectively, and two of the latent prints lifted from the window matched Franks's left palm and right palm, respectively. Scott Verbonus, another latent fingerprint examiner with the King County Sheriff's Office, also compared the latent prints to Franks's known prints and came to the same conclusions as Swihart.

The State charged Franks by amended information with residential burglary. Prior to trial, Franks moved to exclude the testimony of Swihart and Verbonus and requested the trial court conduct a Frye hearing to determine the reliability of the ACE-V method of fingerprint comparison. In support of his motion, Franks relied on a 2009 report by the National Research Council of the National Academy of Sciences, which Franks asserted critiqued the ACE-V method.[7] The trial court denied the motion, concluding that the report did not call into question the general acceptance of the ACE-V method in the scientific community.

Franks proposed jury instructions for the lesser included offense of criminal trespass in the first degree. The court declined to give those instructions. A jury convicted Franks as charged. Franks appeals.

---

[7] National Research Council of the National Academy of Sciences, *Strengthening Forensic Science in the United States: A Path Forward* (2009), available at http://www.ncjrs.gov/pdffiles1/nij/grants/228091.pdf.

## ANALYSIS

### Lesser Included Instruction

Franks argues that the trial court erred when it failed to instruct the jury on the lesser included offense of criminal trespass. We disagree.

Whether a defendant is entitled to a lesser included instruction is analyzed under the two-pronged test outlined in State v. Workman, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). First, each of the elements of the lesser offense must be a necessary element of the charged offense (the "legal prong"). State v. Berlin, 133 Wn.2d 541, 545-46, 947 P.2d 700 (1997) (citing Workman, 90 Wn.2d at 447-48). Second, the evidence must raise an inference that *only* the lesser offense was committed to the exclusion of the charged offense (the "factual prong"). State v. Fernandez-Medina, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000). When analyzing the factual prong, we view the evidence in the light most favorable to the party who requested the instruction at trial. Fernandez-Medina, 141 Wn.2d at 455-56. However, "the evidence must affirmatively establish the defendant's theory of the case—it is not enough that the jury might disbelieve the evidence pointing to guilt." Fernandez-Medina, 141 Wn.2d at 456.

We review a trial court's refusal to give instructions to a jury, if based on a factual dispute, for abuse of discretion. State v. Walker, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998). A trial court abuses its discretion if its decision "is manifestly unreasonable or based upon untenable grounds or reasons." State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

A person commits residential burglary if he or she "enters or remains unlawfully in a dwelling" and does so "with intent to commit a crime against a person or property

5

therein." RCW 9A.52.025(1). The intent required is simply the intent to commit any crime against a person or property inside the burglarized premises. State v. Bergeron, 105 Wn.2d 1, 4, 711 P.2d 1000 (1985). A person commits first degree criminal trespass if he or she "knowingly enters or remains unlawfully in a building" without the additional intent to commit a crime. RCW 9A.52.070(1); State v. Garcia, 179 Wn.2d 828, 849, 318 P.3d 266 (2014).

The legal prong is met here because the elements of criminal trespass in the first degree are necessary elements of residential burglary. See State v. Pittman, 134 Wn. App. 376, 384, 166 P.3d 720 (2006), abrogated on other grounds by State v. Grier, 171 Wn.2d 17, 246 P.3d 1260 (2011). However, the factual prong was not met because the evidence does not support a reasonable inference that Franks entered Tsitsis's house without intending to commit a crime. Even in the light most favorable to Franks, the evidence showed that someone moved a bag of beef jerky from the kitchen countertop to the master bedroom, opened closet doors and a desk drawer in the master bedroom, and opened and drank from a bottle of wine. Franks's fingerprints were on the beef jerky bag, the wine bottle, and the window he used to escape. Franks argues that there was no evidence that he actually removed anything from the house other than the spare car key, which the evidence showed could merely have been misplaced. But the State need not prove that Franks committed a crime, only that he had the intent to do so. It is clear that Franks entered Tsitsis's home with the intent to deprive Tsitsis of his property, and did in fact do so, by drinking Tsitsis's wine and eating his food. The trial court did not err by refusing to instruct the jury on criminal trespass in the first degree.

Failure to Conduct Frye Hearing

Franks contends the trial court erred in denying his request for a Frye hearing on the admissibility of the ACE-V method of fingerprint comparison. However, this court rejected this same argument in State v. Pigott, 181 Wn. App. 247, 325 P.3d 247 (2014). In Pigott, the defendant requested a Frye hearing on the admissibility of the ACE-V method, contending the 2009 National Research Council of the National Academy of Sciences report raised questions as to its continued general acceptance. Pigott, 181 Wn. App. at 248-51. This court held the criticism of the ACE-V method was insufficient to establish that the method was not generally accepted in the scientific community, and that any objections went to the weight of the testimony, not its admissibility. Pigott, 181 Wn. App. at 251. We adhere to our decision in Pigott.

Admission of Hearsay

Finally, Franks argues that the trial court erred in permitting Swihart and Verbonus, over his objection, to testify that they had previously testified as experts in other cases. We review a trial court's evidentiary rulings for abuse of discretion. State v. Magers, 164 Wn.2d 174, 181, 189 P.3d 126 (2008). An evidentiary error is grounds for reversal only if it prejudices the defendant. State v. Neal, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001). An error is prejudicial if, "'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" Neal, 144 Wn.2d at 611 (quoting State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).

The deputy prosecutor questioned Swihart about her qualifications as follows:

[PROSECUTOR]: Have you testified before?

[SWIHART]: Yes, I have.

[PROSECUTOR]: About how many times?

[SWIHART]: I think it's been 40 and 50 times.

[PROSECUTOR]: And those 40 and 50 times, were you accepted as an expert in King County?

[SWIHART]: Yes.

[DEFENSE COUNSEL]: Objection; hearsay.

THE COURT: Overruled.[8]

The deputy prosecutor similarly questioned Verbonus:

[PROSECUTOR]: Now, you mentioned that part of your job duties is to testify. How many times have you testified in court?

[VERBONUS]: At first, when I first started testifying, we really didn't keep track, so when I say about 20 or 25 times, I'm not 100 percent positive with that, but it's right in that ballpark.

[PROSECUTOR]: And have you been accepted as an expert those 20 or 25 times?

[VERBONUS]: Every time I have.

[DEFENSE COUNSEL]: Objection; hearsay.

THE COURT: Overruled. I'll allow it.[9]

Franks contends that the statements made by Swihart and Verbonus regarding their testimony as experts in prior cases were inadmissible hearsay. He contends this case is similar to In re Detention of Pouncy, 168 Wn.2d 382, 229 P.3d 678 (2010), in which our Supreme Court held that the trial court erred in permitting the State to attack

---

[8] RP (Feb. 27, 2013) at 26-27.
[9] RP (Feb. 27, 2013) at 125.

the credibility of a defense expert by offering into evidence trial court findings from another judge in an unrelated proceeding that the expert's methodologies were not generally accepted in the scientific community. 168 Wn.2d at 386-88. But "[h]earsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Swihart's and Verbonus's statements that they had been "accepted" as experts in other cases did not constitute an out-of-court statement made by another, as did the judge's findings in Pouncy. Moreover, even if the statements could conceivably be contemplated as hearsay, any error was harmless. Both Swihart and Verbonus testified extensively as to their qualifications and expertise. Swihart had worked as a latent fingerprint examiner for 22 years, participated in regular trainings, including an advanced seminar at the Federal Bureau of Investigation, and underwent an annual proficiency test. Verbonus had worked as a latent fingerprint examiner for 25 years in both the public and private sector and was certified by the International Association for Identification. Any testimony that Swihart and Verbonus had previously testified as experts did not serve to bolster their credibility such that the outcome of the trial was materially affected.

Affirmed.

Trickey, J

WE CONCUR:

Cox, J.